[PRIZE.  NON-COMMISSIONED CAPTOR.]

## The Dos HERMANOS.  SHIELDS, *Claimant.*

Seizures made, *jure belli,* by non-commissioned captors, are made
    for the government, and no title of prize can be derived but from
    the Prize Acts.

A non-commissioned captor can only proceed in the Prize Court as
    for salvage, the amount of which is discretionary.

The appellate Court will not interfere in the exercise of this discre-
    tion, as to the amount of salvage allowed, unless in a very clear
    case of mistake.

An appeal, under the Judiciary Acts of 1789, c. 20. s. 22. and of
    1803, c. 353. [xciii.] prayed for, and allowed within five years; is
    valid, although the security was not given until after the lapse of
    five years.

The mode of taking the security, and the time for perfecting it, are
    within the discretion of the Court below, and this Court will not
    interfere with the exercise of that discretion.

APPEAL from the District Court of Loui-
siana.

This was the same case, reported *ante,* vol. II.
p. 76. where the decree of the Court below, con-
demning the cargo as enemy's property, was
affirmed by this Court, reserving the question as
to the distribution of the prize proceeds.  The
original capture was made by Mr. Shields, a Pur-
ser of the navy, in the year 1814, in a barge
armed and fitted out to cruise, but not regularly
attached to the navy.  The cause was remanded
to the Court below for further proceedings, and
that Court decreed the proceeds to be equally dis-
tributed between the United States and the cap-

tor, without deducting the captor's expenses. From this decree the captor appealed to this Court.

1825.

The Dos Hermanos

Mr. *C. J. Ingersoll*, for the appellants, stated, *March 5th.* that it had been generally considered by the text writers, and Courts of Prize, that the right to captures, *jure belli*, was in the government, and that no individual could derive any rights of prize but from the express grant of the government.[a] But, on principle, every individual is in a state of war with the enemies of his country; and the common law certainly considers the law of nations as authorizing any subject of the belligerant state to seize enemy's property within the realm, or the property of other subjects previously captured by the enemy, to the exclusion of the king, the admiral, and the owner, unless the latter came the same day they were taken, and claimed them *ante occasum solis.*[b] To the same effect is the case in the book of the 7th *Edw.* IV. 14.

The principle is, that personal effects, seized in war, are acquired to the taker by occupancy; and immoveables, such as cities, lands, &c. to the public.[c] But the crown, always rapacious, and seeking to extend its final prerogative, subsequently introduced the doctrine of public title to personal things taken in war. Thus the sta-

a 2 *Wheat. Rep.* Appx. Note I. p. 71.
b 3 *Reeves' Hist. Eng. Law*, 371, 372.
c *Wood's Inst. Imp. Law*, 154. h. 2. c. 3.

1825.     tute 34 Edw. III. c. 1. declares, that the crown
The Dos   was always seized of the forfeitures of war; and
Hermanos. hence came the doctrine of the droits of admi-
ralty.[a]   It does not appear that this assumption
has ever been expressly recognised by this Court
as a part of the law of this country; and, unques-
tionably, a non-commissioned captor may seize
enemy's property,[b] and after a condemnation, as
in this case, it must be adjudged to the captors.
It is now too late for the government to inter-
pose its claim. The act of the 23d April, 1800,
c. 189. [xxxiii.] s. 5. and the Prize Act of 1812;
c. 430. [cvii.] gives the proceeds of vessels and
goods, adjudged good prize, to the captors. But
at all events, the captors are entitled to be repaid
their expenses, and to a liberal salvage.[c]

The *Attorney General*, contra, argued, that it
was established as an elementary principle in
the law of prize, that all captures *jure belli*, enu-
red to the public, and that the actual captors could
only derive their title from the grant of the go-
vernment. This was the case with commis-
sioned captors, and still more emphatically as to
non-commissioned captors; who, though they
had a right to seize enemy's property, could
claim no title to the proceeds upon adjudication,
except what was derived from the bounty of the
public.[d]   Whatever might have been the ancient

a  1 *Ruffh.* 302.   2 *Reeves' Hist. Eng. Law,* 454.
b  2 *Wheat. Rep.* Appx. Note I. p. 7.
c  The San Bernardo, 1 *Rob.* 178.   The Haase, *Id.* 24.
d  2 *Wheat. Rep.* Appx. Note I. p. 7. 71.

common law doctrine in England, it had been long since settled in that country, that all rights of prize were derived from the grant of the crown. Without entering into all the distinctions as to the capacity in which the crown took, whether in the king's office of Admiral, or *jure coronæ*, it might be laid down as a general proposition, that non-commissioned captors, as a matter of strict right, were not entitled to any share of the prizes captured by them. Captures made by tenders or boats, sent out by officers of the navy, but not regularly attached by public authority to the navy, are condemned as droits of admiralty.[a] But in these, and all other cases of seizures by non-commissioned captors, it was usual to reward the takers with a liberal share of the property, in the discretion of the Court of Admiralty.[b] There was no reason why any different principle or mode of proceeding should be adopted in this country. It does not depend upon any peculiar municipal regulations, but grows out of a principle recognised by all the writers on public law : *Bello parta cedunt reipublicæ.*[c] In the present case, a moiety of the proceeds had been allowed to the actual captors as salvage ; but the provisions in the Prize Acts for the distribution of prizes, were confined to commissioned public and private armed vessels.

1825.

The Dos Hermanos.

a The Melomasne, 5 *Rob.* 41. The Charlotte, *Id.* 280. and note.

b The San Bernardo, 1 *Rob.* 178. The Haase, *Id.* 286. The Amor Parentum, *Id.* 303.

c The Elsebe, 5 *Rob.* 173. 181

Mr. Chief Justice MARSHALL delivered the opinion of the Court, that whatever might have been the ancient doctrine in England in respect to captures in war, it is now clearly established in that kingdom, that all captures *jure belli*, are made for the government, and that no title of prize can be acquired but by the public acts of the government conferring rights on the captors. If the original law of England authorized an individual to acquire to his own use the property of an individual, without any express authority from the public, that law was changed long before the settlement of this country. It never was the law of this country. Before the revolution, all captures from the enemy accrued to the government, to be distributed according to law ; and the revolution could not strip the government of this exclusive prerogative, and vest it in individuals. It is, then, the settled law of the United States, that all captures made by non-commissioned captors, are made for the government; and since the provisions in the Prize Acts, as to the distribution of prize proceeds, are confined to public and private armed vessels, cruising under a regular commission, the only claim which can be sustained by the captors in cases like the present, must be in the nature of salvage for bringing in and preserving the property.

In the present case, the District Court have awarded one half of the prize proceeds, or salvage, to the captors. It was an exercise of sound discretion; and this Court would, with extreme reluctance, interfere with that discretion, unless

in a very clear case of mistake. We perceive no such mistake in this case, and are well satisfied with the amount of the salvage as decreed by the District Court.

As to the question which has been made, whether the appeal was in due time, it appears, that the appeal was prayed for within five years, and was actually allowed by the Court within that period. It is true that the security required by law was not given until after the lapse of the five years ; and, under such circumstances, the Court might have disallowed the appeal, and refused the security. But, as the Court accepted it, it must be considered as a sufficient compliance with the order of the Court, and that it had relation back to the time of the allowance of the appeal. The mode of taking the security, and the time for perfecting it, are matters of discretion, to be regulated by the Court granting the appeal ; and when its order is complied with, the whole has relation back to the time when the appeal was prayed. We must presume the security was given, in this case, according to the rule prescribed by the District Court, and the appeal was, therefore, in time.

Decree affirmed, with costs.